UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN EVANS,

      Plaintiff,

v.                                         Case No. 15-13184

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY and AMERICAN
TRUCKING & TRANSPORTATION RISK
RETENTION GROUP,

      Defendants.                               HON. AVERN COHN

_____/

## MEMORANDUM AND ORDER GRANTING ATTIC'S MOTION FOR SUMMARY JUDGMENT (Doc. 58), GRANTING IN PART AND DENYING IN PART WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. 57), and DENYING IN PART WITH PREJUDICE AND DENYING IN PART WITHOUT PREJUDICE STATE FARM'S MOTION TO DISMISS (Doc. 56)

      This is an insurance case.  The case has two parts.  The first deals with an

insurer priority dispute.  The second deals with proofs of benefits owed.

### I.      PART ONE: Which Insurer Is Responsible

#### A.      INTRODUCTION

##### 1.      The Case

      Plaintiff John Evans is a truck driver and Michigan resident.  On Tuesday, May

27, 2014, Evans was involved in a motor vehicle accident in Cleveland, Ohio while

hauling a load of steel from Michigan to New York.

Evans was engaged to haul the load by a trucking company, T.S. Expediting Services, Inc. (TSE). TSE's liability insurer is Defendant American Trucking and Transportation Insurance Company (ATTIC), a Montana corporation.

Evans was hospitalized for neck and back injuries and discharged the next day. In the year after, he received medical treatment and physical therapy, but did not work.

Evans seeks payment of personal protection insurance (PIP) benefits, for work loss and replacement services under the Michigan No-Fault Automobile Insurance Act (No-Fault Act), M.C.L. § 500.3101, *et seq.* Evans claims the PIP benefits as a spouse under an automobile insurance policy issued to his wife by Defendant State Farm Mutual Automobile Insurance Company (State Farm), an Illinois corporation.

There is no dispute Evans is covered for PIP benefits under the No-Fault Act related to his accident. However, State Farm says ATTIC is the priority insurer under the No-Fault Act because TSE, ATTIC's insured, was Evans's employer and furnished the truck he drove. ATTIC says State Farm is liable as Evans was not TSE's employee but an independent contractor.

ATTIC removed the case from Oakland County Circuit Court based on diversity jurisdiction.

### 2.    Pending Motions

State Farm moved to dismiss, (Doc. 56). Evans moved for summary judgment, (Doc. 57). ATTIC moved for summary judgment, (Doc. 58). The 3 motions concern in part which insurer—State Farm or ATTIC—is responsible to pay PIP benefits to Evans.

2

As will be explained, State Farm—not ATTIC—is the responsible insurer for payment of PIP benefits to Evans under the No-Fault Act. To this extent, ATTIC's motion for summary judgment is GRANTED. ATTIC is terminated as a party.

Evans is entitled to PIP benefits from State Farm as a spouse under his wife's policy. To this extent, Evans's motion for summary judgment is GRANTED IN PART and State Farm's motion to dismiss is DENIED IN PART WITH PREJUDICE.

### B. BACKGROUND

#### 1. Truck Operations

##### a. Lisa Tucker's Arrangement with TSE

Evans drove a truck for Lisa Tucker (Tucker). Tucker provided transportation services to TSE. Tucker leased a cab to TSE. TSE leased its semi-trailer to her. Tucker had exclusive use of the cab and semi-trailer. She could use the cab for any purpose, but the semi-trailer only for TSE business. Tucker engaged a driver to haul TSE-dispatched loads to specified locations using the cab and semi-trailer.

Tucker's arrangement with TSE was governed by a "Motor Vehicle Lease and Independent Contractor Agreement." The agreement said "the relationship herein created is that of independent contractor, and NOT THAT OF EMPLOYER AND EMPLOYEE." (Doc. 58-3 at 8). Tucker was free to (1) accept or reject a load for any reason, (2) set her hours, and (3) select routes and stops within a delivery timetable. Tucker separately (1) paid income tax on her earnings, (2) filed tax report forms, (3) deducted income-tax withholdings from her earnings, and (4) paid the expenses of operation including compensation for drivers and maintenance costs of the cab.

3

TSE provided PIP insurance "to the extent required by law" while the cab and semi-trailer were used in transportation services for TSE. Tucker paid for property and liability insurance for the cab when it was not used for TSE transportation services. Either Tucker or TSE could terminate the agreement at any time with 7 days' notice.

### b.    Tucker's Compensation from TSE

TSE agreed to pay Tucker $1 per "loaded" mile with a $0.60/mile authorized bonus. There was "no representation as to the amount or frequency" of truck usage. (*Id.* at 8). Tucker testified in deposition "it was based on load. Each load . . . paid a certain amount, and [sh]e w[as] paid a percentage of the amount." (Doc. 57-9 at 27). Elaborating, Tucker noted "[t]he dispatch person would call and say . . . do you want this load. It pays X amount of dollars." (*Id.* at 29).

### c.    Tucker Enlists Evans as a Driver

Tucker knew Evans and that he was an experienced truck driver. After Tucker's driver walked off the job on his second load, Tucker asked Evans to act as a driver. Evans agreed.

Evans attended an orientation put on by TSE on May 19, 2014. He also signed a "Lease and Information Disclaimer." He was told of procedures for "[a]ccepting or refusing a load" and of compensation based on loaded mileage and bonus miles. (Doc. 58-9 at 3). Compensation was to be "calculated at a percentage of gross revenue, and/or agreed rate for each/every cargo-loaded trip/load under [TSE] Dispatch." (*Id.*).

Evans was told "[i]t is impossible to predict the type/number of cargo loaded runs I might be dispatched upon in any given time period. THERE ARE NO GUARANTEES"

4

and "THERE ARE NOT GUARANTEES OF ANY SPECIFIC CONTRACT COMPENSATION." (*Id.* at 2-3). The form he signed read "I will not be an employee of [TSE]. I will be running my own business, under contract to [TSE], i.e., I will be an independent contractor at all times that I am associated with the company." (*Id.* at 3).

Evans testified in deposition that he could not reject loads. He testified he planned to work 5 or 6 days per week driving a truck for Tucker. Evans described his role as that of a "subcontractor."

### d.    Evans's Compensation

Tucker testified in deposition she told Evans at the outset she would pay him a percentage of her revenue each load. Tucker testified the percentage "might" have been as much as 20% in light of Evans's experience. The payment would vary by load.

In his deposition, Evans testified he was to receive an IRS Form 1099 from Tucker for his services. Evans also testified he was to be paid a "round fee" per load. He testified he understood this would amount to around $1,100 per week, based on his conversations with Tucker.

Tucker also testified in deposition that the $1,100 amount seemed "reasonable" given Evans's experience and the percentage he would make per load. Tucker elaborated that "[TSE] did give me the impression that they had plenty of work." (Doc. 57-9 at 50).

### 2.    Evans's First Day and Accident

Evans's first day driving was Tuesday, May 27. The accident occurred in the course of his route that day. The truck was totaled, and the delivery was never completed. Neither Tucker nor Evans was paid.

5

According to an affidavit of a TSE representative, TSE would have paid Tucker for any loads delivered. Tucker was responsible for her own expenses including payment of drivers.

## C.   LEGAL STANDARD

Summary judgment will be granted if the moving party demonstrates that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *In re Dollar Corp.*, 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). In doing so, the Court "must view the evidence in the light most favorable to the non-moving party." *Emp'rs Ins. of Wausau v. Petrol. Specialties, Inc.*, 69 F.3d 98, 101 (6th Cir. 1995).

## D.   DISCUSSION

### 1.

State Farm says ATTIC is a higher priority insurer under the No-Fault Act because Evans was an employee of TSE. State Farm concludes this on the grounds that (1) TSE "dictate[d]" the number of loads via dispatch, (2) Evans testified he could not reject a load, (3) TSE set the amount to be paid per load, and (4) TSE conveyed detailed instructions to Evans for performing his job as driver at the orientation.

6

ATTIC responds Evans was an independent contractor because the contractor agreement and disclaimer form deemed Tucker and Evans contractors and gave Tucker the right to reject loads, set hours, and choose routes. Further, Evans was not on TSE's payroll, was to get the Form 1099 from Tucker, and was not guaranteed a number of loads or payment. The arrangement was terminable at will by either Tucker or TSE.

## 2.

Under the No-Fault Act, a person or his spouse's automobile insurer is "liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle." M.C.L. §§ 500.3105(1), 500.3114(1). An exception to the rule that one's own insurer is first in priority exists for "[a]n employee . . . who suffers accidental bodily injury while an occupant of a motor vehicle owned or registered by the employer." *Id.* § 500.3114(3). Such an employee is entitled to PIP benefits first "from the insurer of the furnished vehicle." *Id.*

To determine if a person is an employee or independent contractor under the No-Fault Act, courts apply a four-factor "economic reality" test. *Adanalic v. Harco Nat. Ins. Co.*, 309 Mich. App. 173, 191 (Mich. Ct. App. 2015). The factors, to be considered together, are: "(a) control of the worker's duties, (b) payment of wages, (c) right to hire, fire and discipline, and (d) the performance of the duties as an integral part of the employer's business towards the accomplishment of a common goal." *Id.*

*Adanalic* concerned an insurer priority dispute under the No-Fault Act related to an accident involving a truck driver who was injured loading items onto a semi-trailer. *Id.* at 177-78. The driver owned the cab and leased the semi-trailer from a trucking

7

company for which he contracted to haul loads using the truck. *Id.* at 177 n.1. The issue was whether the driver was an employee of the trucking company, in which case the company's insurer was responsible, or an independent contractor, in which case his own wife's insurer was responsible. *Id.* at 177-78, 190-91. The Court of Appeals affirmed the trial court's application of the four-factor test and conclusion that the driver was an independent contractor. *Id.* at 191-94. In doing so, the Court reasoned the driver (1) had a contractual right to refuse any load offered and determine the means of hauling, (2) could haul loads for competitors, (3) was paid by the load, (4) did not have tax withheld from his pay and received a Form 1099, (5) was responsible for his own operating expenses and income taxes, (6) could terminate the arrangement at will, and (7) was one of many drivers providing a fungible service for the company on a short-term basis. *Id.*

### 3.

*Adanalic* governs this case. There is no evidence suggesting Evans was an employee of TSE. TSE sent out dispatches for loads it needed drivers to haul. Tucker, who leased a cab to TSE and leased a semi-trailer from TSE, lined up qualified drivers and answered TSE's dispatches. Tucker engaged Evans's services as a driver to haul a load for TSE. In exchange, TSE agreed to pay Tucker $1 per loaded mile, and Tucker agreed to pay Evans a portion of this for his efforts.

Evans identified himself as a "subcontractor." He was not paid by TSE, nor was he on its payroll. Evans was to receive a Form 1099 from Tucker. Tucker was free to reject any load, and Evans was not bound to accept any load. Evans could choose his routes. He was not guaranteed any number of loads or payment. Tucker was paid by

8

TSE, and Evans was paid by Tucker, according to the number of loaded miles that were completed. The arrangement could be terminated at will. All of the elements present in *Adanalic* are present here to establish that Evans was an independent contractor.

## I.    PART TWO—Reasonable Proof of Benefits Owed

It is clear State Farm must pay PIP benefits to Evans; it is unclear what Evans is owed. Evans seeks compensation for work loss and replacement services incurred but has offered insufficient proofs of these benefits.

Evans's motion for summary judgment and State Farm's motion to dismiss are DENIED IN PART WITHOUT PREJUDICE as to proof of benefits.

### A.    BACKGROUND

Evans got certificates from his doctors certifying that he was unable to work and needed replacement services for periods between June 17, 2014 and May 11, 2015. Evans did not work from the time of the accident through April 20, 2015.

#### 1.    Work Loss

From April 21, 2015 to December 2015, Evans drove a truck for A&D Transport Express (A&D). He was paid $0.42 per mile. An attached pay statement dated July 22 shows a gross pay of $1,097.40, before deductions, for 10 loads completed between July 5 and July 11. On February 24, 2016, Evans began driving for Jenny Transport. He testified on February 26 he was to be paid "40-something" cents per mile.

#### 2.    Replacement Services

Evans testified in deposition that his household duties were: cooking 3 days a week for himself and his wife, taking out garbage, doing dishes, and doing laundry

"sometimes." His wife did other household chores. Evans testified he made household repairs and performed outdoor work—lawn mowing, snow shoveling, and painting.

Post-accident, Evans testified he needed services for: lawn mowing, washing dishes, cooking, taking out garbage, household repairs, snow shoveling, and lawn fertilizing. Evans testified his wife performed services—washing dishes, cooking, taking out garbage, making some repairs, snow shoveling, and some lawn mowing. An outside company was paid to aerate and fertilize the lawn, and a freelancer to mow the lawn sometimes. Evans testified he told his wife in 2014 she would be paid $20 a day for these services after learning he could be entitled to compensation for replacement services under the No-Fault Act.

## B.   DISCUSSION

### 1.

State Farm notes Evans has failed to submit documentation to support his PIP claims for work-loss benefits and compensation for replacement services incurred. State Farm says Evans instead offers his own self-serving testimony. State Farm points out that Evans has failed to verify what services were delivered and when, and to corroborate his assertion of a $1,100 weekly income when his pay varied by number and nature of loads dispatched. As Evans did not provide affidavits, tax returns, and the like to substantiate his claims, State Farm says he has failed to offer reasonable proof of benefits to which he is entitled under the No-Fault Act.

Evans responds he is entitled to $6,580 in replacement services, reflecting the maximum allowable amount of $20 per day for every day between the accident and his return to work as a truck driver. He requests $51,700 in work-loss benefits,

10

corresponding to the $1,100 weekly pay he testified he could have made working full-time for Tucker. Evans relies on his own testimony as to contemplated earnings from Tucker and household services delivered by his wife, explaining he did not offer affidavits or other proofs of benefits because State Farm denied responsibility. Evans also attaches a weekly pay stub from his subsequent job at A&D.

Evans relies on *Douglas v. Allstate Ins. Co.*, 492 Mich. 241 (Mich. 2012), for the proposition that a claimant's testimony alone may establish reasonable proof of benefits for replacement services. He asserts any deficiencies in his proofs of work-loss benefits are questions of fact for the jury, analogizing to *Swartout v. State Farm Mut. Auto. Ins. Co.*, 156 Mich. App. 350 (Mich. Ct. App. 1986), a case involving a full-time nursing student delayed by an accident in starting a post-graduation job she had lined up.

### 2.

A PIP claimant must provide "reasonable proof of . . . the amount of loss sustained" in order to receive payment of benefits from a responsible insurer. M.C.L. § 500.3142(2). Work-loss benefits include "loss of income from work an injured person would have performed . . . if he or she had not been injured." *Id.* § 500.3107(1)(b). Replacement services are "[e]xpenses . . . reasonably incurred in obtaining ordinary and necessary services in lieu of those that, if he or she had not been injured, an injured person would have performed." *Id.* § 500.3107(1)(c).

A plaintiff need not produce formal documentation such as checks, receipts, bills, or invoices to recover for replacement services incurred under the No-Fault Act. *Fortier v. Aetna Cas. & Sur. Co.*, 131 Mich. App. 784, 789-91 (Mich. Ct. App. 1984) (discussing a survivor's claim for replacement services under M.C.L. § 500.3108(1)). Moreover,

replacement services may be compensable even if provided by family members, so long as there was an agreement for payment. *Id.* at 790-92. Nevertheless, some record is needed to substantiate the amount claimed such as a family member's testimony in conjunction with a written ledger of the services performed, time spent, and rates charged. *Id.* at 788, 794.

For claims of work-loss benefits under the No-Fault Act, a truck driver paid on a per-mileage basis is entitled to compensation for adjusted gross income in the period he was unable to work, that is, projected receipts minus operating costs. *See Adams v. Auto Club Ins. Ass'n*, 154 Mich. App. 186, 192-93 (Mich. Ct. App. 1986); *McAdoo v. United States*, 607 F. Supp. 788, 797-98 (E.D. Mich. 1984), *declined to follow on other grounds by Premo v. United States*, 599 F.3d 540, 548 (6th Cir. 2010). Proof may be in the form of tax returns, earnings statements, or other comparable documentation. *See Adams*, 154 Mich. App. at 192-93; *McAdoo*, 607 F. Supp. at 797-98.

### 3.

Evans has not offered evidence beyond his own testimony of work lost and replacement services incurred. This is not "reasonable proof" under the No-Fault Act. Evans need not document everything to the nines. However, he must offer some reasonable record of (1) how many loaded miles he would have driven per week and how much he likely would have been paid for it, and (2) what services his wife had to perform in his stead and when.

Evans's own account is deficient. His assertion of replacement services 7 days a week is incompatible with his claim that he would have been working 5 or 6 days a

12

week as a truck driver, on the road full-time. Moreover, there is no statement, log, or affidavit from his wife to support the assertion.

Evans also has not elucidated key information relating to his lost income. He does not offer an average number of loaded miles a truck driver in his position working for Tucker would have driven in the period he was unable to work. Instead, he asserts a weekly pay of $1,100 without regard to the number of loads accepted, miles driven, or costs deducted. This does not comport with the realities of how truck drivers are paid or how he has been paid. Nor are there other indicia such as tax returns to support it.

Evans attaches a pay statement for a single workweek from his subsequent job as a truck driver. However, that job lasted for 9 months. Without any other pay statement or annual tax return, it is impossible to discern whether or not the cited week's pay is reflective of Evans's overall driver earnings over time. In sum, more is needed for the Court and State Farm to know how much Evans is owed.

Evans's reliance on *Douglas* and *Swartout* is misplaced. *Douglas* stands for the proposition that a caregiver's testimony may establish that he or she expected payment (i.e., services were incurred) for attendant care under the No-Fault Act. *Douglas*, 492 Mich. at 269-72. It has no application here, where a *claimant* has offered only his own testimony to support a claim for replacement services. *Swartout* said there was a question of fact of work-loss benefits owed where the plaintiff supported her claim with affidavits from her school and employer detailing her graduation date, planned employment, and pay rate. *Swartout*, 156 Mich. App. at 352-55. Evans was not jobless at the time of the accident and has offered no such proofs to support his claim.

## C.    CONCLUSION

As reasoned above, State Farm is not entitled to dismissal of Evans's claim for no-fault benefits.  Evans is not entitled to summary judgment.  The record is incomplete.  A status conference will be scheduled to chart the future course of the case.

SO ORDERED.

_____
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: *10-19-2016*
       Detroit, Michigan

14